[669 NYS2d 656]

Rie Takayama, Respondent, v Helmut Schaefer, Defendant, and David E. Weissman, Appellant.

Second Department, March 2, 1998

### APPEARANCES OF COUNSEL

*Warren S. Landau,* Smithtown, for appellant.
*Steven Greenfield,* Great Neck, for respondent.

### OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether an escrow agent, where the escrow agreement is silent as to his or her duties in the event of a dispute, must deposit the funds in court pursuant to CPLR 1006 to avoid liability for interest and costs. We conclude that there is no such obligation.

In April 1990 the plaintiff purchaser, Rie Takayama, and the defendant seller, Helmut Schaefer, entered into a contract for the sale of real property. The contract provided that the down payment of $12,000 was to be held by the seller's attorney, the appellant David E. Weissman, until closing of title. "Closing" was defined in the contract as "settlement of the obligations of SELLER and PURCHASER to each other under this contract, including the payment of the purchase price to SELLER", and delivery of the deed to the purchaser. The contract further provided that it "is subject and conditioned upon the Purchaser obtaining" a mortgage commitment on specified terms.

The appellant, upon receipt of $12,000 from the plaintiff seller, deposited the same in an "interest on lawyer" (hereinafter IOLA) account *(see,* Judiciary Law § 497). Pursuant to Judiciary Law § 497 (2), moneys received by an attorney in escrow "which, in the judgment of the attorney, are too small in amount or are reasonably expected to be held for too short a time to generate sufficient interest income to justify the expense of administering a segregated account" may be deposited in an IOLA account. The plaintiff does not challenge the appellant's decision to place the funds in an IOLA account. In any event, Judiciary Law § 497 (5) absolves an attorney of liability for placing funds in an IOLA account pursuant to a good-faith judgment that the funds were suitable for placement in such an account.

By letter dated June 19, 1990, the purchaser's attorney informed the appellant that the purchaser's mortgage application had been denied, and asked for return of the money held in escrow. By letter dated July 19, 1990, the appellant informed the purchaser's attorney that he needed "a copy of the mortgage application and bank denial letter to determine if your clients acted in good faith and in a timely manner".

In a letter dated July 23, 1990, to the appellant, the purchaser's attorney reiterated his demand for immediate return of the deposit, and further stated "You are not going to be provided with a copy of the mortgage application since you are not entitled to it". The letter further stated that if the down payment were not returned within five days, the purchaser would seek interest, penalties, and attorneys' fees against both the seller and the appellant.

The appellant points out, and it is undisputed, that the buyer's attorney, who presumably reviewed the contract, did not state, or even suggest to the appellant, that while the dispute continued the money should be taken out of the appellant's escrow account and deposited in court, or in an interest-bearing account.

In August 1990, the plaintiff purchaser commenced the instant action in the Civil Court of the City of New York, Queens County. The parties proceeded to trial before Judge LaTorella on October 31, 1994. At the trial, the appellant acknowledged he was holding the $12,000 down payment in an IOLA account. The court noted that the appellant "doesn't have a role as a party to the contract * * * other than as an escrow agent" and was named a party defendant "[b]ecause he has the money". After the plaintiff gave testimony detailing her efforts to obtain a mortgage, the trial concluded.

In a decision dated December 2, 1994, the trial court found that the plaintiff made diligent efforts to obtain a mortgage, and the seller waived any time limit for the plaintiff to notify the seller of her inability to obtain a mortgage. The decision concluded with the following sentence: "Accordingly, judgment for plaintiff in the sum of $12,000 with interest from June 28, 1990, costs and disbursements". Judgment was entered against both the seller and the appellant on December 2, 1994, for $12,000 plus interest of $5,062 and costs of $422.50.

The appellant moved to amend the judgment to limit his liability to the $12,000 held in escrow. As Judge LaTorella was no longer in the Civil Court, the motion was assigned to Judge Weinstein, who denied it on the ground that "This court is not

empowered to take any action affecting a judgment entered upon a decision after trial, particularly that of another judge".

The appellant and his client-seller took appeals from the judgment entered December 2, 1994 and the order dated June 13, 1995. On appeal to the Appellate Term, that court first reached the issue now before this Court, and concluded: "In the case at bar the escrow agreement was silent as to the duties of the escrow holder in the event of a dispute. In such instances the escrow holder, in order to be relieved of any liability, should have deposited the funds into court and be thereby relieved of any liability including interest *(see,* CPLR § 1006; *Jensen v Metropolitan Life Ins. Co.,* 27 AD2d [934] [2d Dept.], *appeal dismissed* 20 NY2d 739; *Pray v Cement & Concrete Workers, Dist. Council Welfare Fund,* 65 Misc 2d 530). However, defendant chose to retain said funds in his escrow account and therefore subjected himself to liability for statutory interest and costs *(see, September Bride [sic] Publishing, B.V. v Stein & Day, Inc.,* 884 F2d 675, 683-684; *cf., Falk v Goodman,* 7 NY2d 87, 91; *R.A.J.N. Corp. v Mizrachi,* 190 AD2d 641; *88 Blue Corp. v Staten Builders Company,* 176 AD2d 536; *Pomeranz v Dineen,* 114 AD2d 944)".

The cases cited by the Appellate Term in support of its conclusion *(see, Jensen v Metropolitan Life Ins. Co.,* 27 AD2d 934, *supra; Pray v Cement & Concrete Workers, Dist. Council Welfare Fund,* 65 Misc 2d 530; *Septembertide Publ. v Stein & Day,* 884 F2d 675, *supra)* do not involve escrow agents. In *Jensen,* an insurance carrier was discharged from liability upon payment into court of policy proceeds subject to conflicting claims. In *Septembertide,* the stakeholder was holding royalties subject to different claims; the money was not held in escrow. In *Pray,* the court held that a union benefit fund which retained $2,500 in death benefits was liable for interest, since (1) its obligation to make payment under the policy arose upon proof of the decedent's death, and (2) it "elected to retain possession and use of the death benefits pending the resolution of the conflicting claims" *(Pray v Cement & Concrete Workers, Dist. Council Welfare Fund, supra,* at 532). In contrast, the appellant, as escrow agent, had no right to use the funds he held in escrow *(see,* 22 NYCRR 1200.46 [b]).

Similarly, in *Merrimack Mut. Fire Ins. Co. v Moore* (91 AD2d 759), an insurance carrier was held liable for interest because it had an obligation to pay policy proceeds, but failed to either timely commence an interpleader action or issue a check to the proper beneficiary.

These cases, none of which involve attorneys' escrow accounts, rest on a well-established premise, notably that a person who holds assets that are the subject of a dispute should protect the assets by using the interpleader-stakeholder device, so that the assets are secure and will not be diverted or misdirected. An attorney-escrowee, however, is already pledged and obligated to secure the funds and is absolutely prohibited from disposing of them unilaterally. In the case before us, the appellant simply continued to keep the funds secure in his escrow account while awaiting a court order, and in so doing accomplished the functional equivalent of an interpleader. We know of no case in which an attorney has ever been held personally liable under these circumstances, and given the existence of Judiciary Law § 497 (5) and the other circumstances of this case, we see no occasion to make this the first such instance.

An escrow agent not only has a contractual duty to follow the escrow agreement, but additionally becomes a trustee of anyone with a beneficial interest in the trust (see, *Farago v Burke,* 262 NY 229; *Oppenheim v Simon,* 57 AD2d 1006) with the "duty not to deliver the escrow to anyone except upon strict compliance with the conditions imposed" *(Farago v Burke, supra,* at 233). Thus, an escrow agent can be held liable for breach of the escrow agreement and breach of fiduciary duty as escrowee *(see, Grinblat v Taubenblat,* 107 AD2d 735). It would have been improper for the appellant to give the money to his client, and no less improper for him to turn it over to his client's adversary. He asserts that under these circumstances, and because the escrow agreement did not dictate otherwise, he secured the money by retaining it in his escrow account.

It is well settled that, in the event of a dispute, the escrow funds may not be released until the conditions of the escrow agreement are fully performed and it is "clear that no factual issues or viable claims exist under the closely scrutinized terms of the escrow agreement" *(E.S.P. Adj. Servs. v Asta Group,* 125 AD2d 849, 850; *see, Matter of Kaplan v Shaffer,* 112 AD2d 369). In a dispute between the buyer and the seller over escrow funds, the escrow agent is a proper party, "so that he [or she] will be amenable to any judgment rendered after trial with respect to the disposition of the escrow funds" *(Zwirn v Goodman,* 206 AD2d 360, 362; *BTS, Inc. v Webny Corp.,* 157 AD2d 638; *Pomeranz v Dineen,* 114 AD2d 944, *supra).* These cases make no mention of an obligation to pay money into court or any liability that follows when an attorney continues to secure

the money, in escrow. While the remedy of interpleader is available to an escrow agent, the escrow agent may retain money and "compel proof of a clear right to the stake" *(Falk v Goodman,* 7 NY2d 87, 91, *supra).* Although an interpleader action is an appropriate (and perhaps the safest) course, there is no legal or ethical obligation to commence an interpleader action under pain of liability. The escrow agent may attempt to facilitate a settlement of the dispute, or hold the funds indefinitely *(see generally,* Brooklyn Bar Ethics Opn 1993-1, NYLJ, Dec. 20, 1993, at 6, col 4; Nassau County Bar Assn Ethics Opn 91-21).

We emphasize the specific wording of the contract of sale before us, which requires the escrow agent to hold the $12,000 until "closing of title". Closing is defined elsewhere in the contract as "settlement of the obligations of SELLER and PURCHASER to each other under this contract". In this case, settlement of those obligations never occurred.

In short, the fact that an escrow agent is permitted to implead his or her clients, and that others similarly situated may have done so, is insufficient to impose liability. To impose liability, the condition precedent to such "liability clearly contemplated by the escrow agreement" must be satisfied *(Roossin v Rodin,* 140 NYS2d 315, 316). The plaintiff must show the escrow agent breached its duty under the escrow agreement, or breached its fiduciary duties to either the seller or the buyer *(see, Grinblat v Taubenblat, supra).* However, there was no such proof here. Indeed, the issue never came up at trial, nor is it mentioned in the decision of the Civil Court.

Moreover, we note that Judiciary Law § 497 (5) absolves an attorney from liability for the "good faith" placement of escrow monies in an IOLA account and that the appellant's good faith was never questioned or even raised at any point in the proceedings. This is not to say that there are no circumstances under which an attorney may be held responsible or that the safe-harbor provision of Judiciary Law § 497 (5) has no limits. In the case before us, however, for the reasons stated above, we find no basis to impose personal liability on the appellant.

Accordingly, the order dated July 5, 1996 is reversed, on the law and the facts, the judgment of the Civil Court of the City of New York, Queens County, is reversed, insofar as appealed from, the provisions thereof which awarded interest and costs against the appellant are vacated, and the order dated June 13, 1995 is vacated in light of our determination of the appeal from the judgment.

LUCIANO, J. (dissenting). The question before this Court is not simply whether the appellant, admittedly acting as an escrow agent, had an obligation to deposit the plaintiff's down payment with the court. Rather, the question is whether, at the point that it became evident to the appellant that there was a dispute as to the ownership of the funds, he breached his fiduciary duty, as the escrow agent now acting for the benefit of both parties, to exercise due care in maintaining the funds pending the outcome of the litigation.

While there may be no express legal or moral obligation to commence an interpleader action, I respectfully disagree with the majority's conclusion that under the circumstances of this case the appellant, as escrow agent, bore no liability for his unilateral decision to hold the buyer's down payment in a noninterest-bearing IOLA account pending the outcome of litigation. Significantly, prior to the entry of judgment, the appellant offered the defense that he acted solely as the escrow agent holding the funds in the IOLA account. After entry of judgment, he sought to amend the caption to add "escrow agent" after his name, apparently anticipating his argument on appeal. Although the postjudgment motion was denied, there can be no doubt that the appellant voluntarily assumed the role of escrow agent for the transaction, thereby voluntarily assuming the corresponding fiduciary duties and obligations.

The escrow agent is, in effect, the agent of both parties, and, therefore, acts for the benefit of both parties *(see, 99 Commercial St. v Goldberg,* 811 F Supp 900, 906; *see also, Farago v Burke,* 262 NY 229, 233). As a fiduciary, the escrow agent is required to exercise that degree of care which a prudent person of discretion and intelligence would employ in his or her own similar affairs *(see, National Union Fire Ins. Co. v Proskauer Rose Goetz & Mendelsohn,* 165 Misc 2d 539, 551; *cf., King v Talbot,* 40 NY 76, 86; *cf., Matter of Hahn,* 93 AD2d 583, *affd* 62 NY2d 821). At least one of the duties of fiduciaries is to make the funds in their care productive *(see, National Union Fire Ins. Co. v Proskauer Rose Goetz & Mendelsohn, supra).*

In the present case, the appellant has attempted to justify his failure to place the funds in an interest-bearing account once the dispute arose by arguing that since the parties had never settled their obligations to each other under the contract, he could do nothing as the escrow agent except hold the down payment until such settlement. This is a simplistic argument which ignores the fact that he is an attorney charged with knowledge of the fiduciary duties of an escrow agent to the parties in a real estate transaction.

As an attorney, the appellant was undoubtedly aware of the potential duration of this litigation; as an escrow agent under such circumstances, he had an obligation to handle the funds in a manner beneficial to the buyer as well as the seller. Thus, he should have maintained the productivity of the funds for the benefit of the buyer who, but for the appellant's initial refusal to return the down payment without verification of the buyer's "good faith" attempt to secure a mortgage, would have had the use and enjoyment of the funds. Notably, the appellant did not have a right to demand evidence of good faith under the terms of the contract of sale. Nor has the appellant taken issue with the Civil Court's determination that the buyer acted in good faith and that, as a result, the down payment should have been returned to him upon his request.

It is significant that the appellant is an attorney who is aware of the legal procedural options available to him. While a matter of speculation, it is certainly likely that if the funds held in escrow had belonged to the appellant, he would have taken whatever actions were necessary to maintain their productivity. At the very least, he might have placed the funds in an interest-bearing account. Similarly, as the escrow agent armed with such special knowledge, the appellant had a heightened duty to take appropriate protective action which would satisfy his fiduciary duty to both parties when handling the escrow funds.

By commencing an interpleader action pursuant to CPLR 1006, the appellant could have protected the interests of both parties. The seller's interest would have been protected because the escrow agent would no longer have any probable obligation to release the funds to the buyer upon the buyer's demand. Since the funds would have been placed in an interest-bearing account under the supervision of the court, the buyer's interest would have been protected. In any event, the appellant would have insulated himself from any liability.

Judiciary Law § 497 (5) does not, contrary to the majority's conclusion, relieve the appellant of liability under these circumstances. Funds which qualify for placement in an IOLA account are those which, in the judgment of the attorney, are too small in amount or are reasonably expected to be held for too short a time to generate sufficient interest income to justify the expense of administering a segregated account for the benefit of the client or beneficial owner (Judiciary Law § 497 [2]). Judiciary Law § 497 (5) provides in relevant part that "[n]o attorney * * * shall be liable in damages * * * because of a *de-*

*posit* of moneys to an IOLA account pursuant to a judgment in good faith that such moneys were qualified funds" (emphasis added).

It is conceded that the initial placement of the down payment in the IOLA account was done in good faith, and, therefore, under the plain language of the statute, the appellant may not be held liable because he deposited the funds in that type of account. The breach of fiduciary duty occurred, however, when the appellant, now acting as the escrow agent for both parties, permitted the funds to remain in the short-term account when it became evident to him that there was a conflict between the buyer and seller which would not be resolved without resort to litigation of an indeterminate duration, and that the IOLA account, by definition, would be inadequate to protect the interests of both parties.

In characterizing himself solely as an escrow agent, the appellant misconstrued his role to mean that he should take no action at all. In doing so, he favored his client, the seller, to the detriment of the buyer. I suggest that by his refusal to release the down payment to the buyer until he had evidence of the buyer's good-faith attempt to secure a mortgage and by thereafter leaving the funds in the IOLA account, the appellant purposefully acted for the benefit of his client, and not as an impartial escrow agent. Thus, the appellant's characterization is disingenuous. Nevertheless, even if we accept as true that he acted as the escrow agent for purposes of holding the funds pending the outcome of the litigation, we may conclude that the appellant breached his fiduciary duty to the buyer to maintain the productivity of the funds in escrow, and he should bear the burden, along with the seller, for the lost interest.

BRACKEN, J. P., and ROSENBLATT, J., concur with GOLDSTEIN, J.; LUCIANO and COPERTINO, JJ., dissent in a separate opinion by LUCIANO, J.

Ordered that the order dated July 5, 1996 is reversed, on the law and the facts, with costs, the judgment of the Civil Court of the City of New York, Queens County, is reversed, insofar as appealed from, the provisions thereof which awarded the plaintiff interest and costs against the appellant are vacated, and the order dated June 13, 1995 is vacated in light of our determination of the appeal from the judgment.